**STATE of Tennessee**

v.

**Anthony Craig SMITH.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 29, 2008 Session.

April 11, 2008.

Hank Hill, Chattanooga, Tennessee, for the appellant, Anthony Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William H. Cox, III, District Attorney General; and Boyd Pat-terson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA McGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

The State of Tennessee appeals from the Hamilton County Criminal Court's order that sustained the appeal of the petitioner, Anthony Craig Smith, from the general sessions court. The general sessions court found that the petitioner had violated the implied consent law, *see* T.C.A. § 55–10–406 (2004), and the criminal court ruled upon de novo review that the evidence was insufficient to support an adjudication that the petitioner violated the law. On appeal of the criminal court's order, we hold that the defendant did not perfect a timely appeal to the criminal court, that the writ of certiorari may be inapt as a means of the criminal court's reviewing the general sessions court order, and that the State did not waive these two issues. Accordingly, we reverse the order of the criminal court and remand the case.

On February 6, 2006, the petitioner filed in the criminal court a petition for writ of certiorari and supersedeas to seek review of the general sessions court's January 24, 2006 order "purporting to convict the [p]e-titioner of [violating the] implied consent [law]."

On November 13, 2006, the criminal court conducted a hearing. Counsel for the petitioner stated that the general sessions court's order holding the petitioner in violation of the implied consent law should be overturned because the police officer who stopped the petitioner's vehicle on a suspicion of driving under the influence (DUI) lacked reasonable grounds for asking the petitioner to submit to a blood test. *See* T.C.A. § 55–10–406(a)(1) (2004)

(providing that a law enforcement officer's "reasonable grounds to believe" that a person is guilty of driving under the influence constitutes the basis for a request for a blood test, which in turn triggers a violation of the implied consent law if the person refuses the request).

In the hearing, Chattanooga police officer Jeff Ballard testified that on September 11, 2005, he had been called to the scene in Chattanooga where another officer had stopped the petitioner for running a red light. Officer Ballard testified that when he approached the petitioner, he smelled "the odor of alcohol." The petitioner denied drinking alcohol. After performing field sobriety tests, the officer "got the minimal clues to suggest that [the petitioner] was impaired, [and that, the petitioner] was ... probably right at the legal limit possibly." The petitioner "kept asking to take a blood test." Officer Ballard read to him the implied consent form, placed him under arrest for DUI, and took him to the police station. When the nurse arrived to draw blood, the petitioner wanted to discuss "the case" with her, but Officer Ballard told him their purpose at that point was not to discuss the case. The petitioner then declined the blood test.

The State then introduced the video recording of the petitioner's field sobriety testing. The tape showed the petitioner's performing field sobriety tests uneventfully except for raising his arms once on the walk and turn, not exactly following instructions in reciting the alphabet segment, and counting backward beyond the number the officer stated as the stopping point. Following her review of the recording, the trial judge stated, "I would never convict him of DUI based on that," but the judge indicated she wanted to consult case law to determine whether reasonable grounds to request a blood test were provided by "the smell of alcohol, [the petitioner's cutting] the guy off and ... a couple of mistakes" on the field sobriety tests.

On November 17, 2006, the criminal court entered an order treating the petition for writ of certiorari as an appeal from a general sessions court's ruling in a civil action pursuant to Tennessee Code Annotated sections 27–5–101, –108. The court held that the appeal was timely pursuant to Tennessee Rule of Civil Procedure 6.01. The court then found that the petitioner had been called to pick up and transport a friend who had been drinking and that the petitioner's "eyes were not bloodshot, his speech was not slurred, [and] his gait was not unsteady." The court found that the petitioner made only a few minor mistakes on the field sobriety tests. The court found that the general sessions court had dismissed the DUI charge upon motion of the State. The court held that Officer Ballard lacked reasonable grounds for requesting a blood test and reversed the order of the general sessions court.

The State filed a timely appeal.

The State posits that the criminal court improperly treated the case before it as a timely presented ordinary appeal. It argues that the criminal court was constrained to conduct the more limited review prompted by a petition for a writ of certiorari and that such a review would result in a denial of the writ. The petitioner claims that the criminal court's treatment of the petition as an ordinary appeal was permissible because the filing was timely as such an appeal. Alternatively, he argues that the facts of record support the granting of relief via the writ of certiorari. In any event, he claims that because the State failed to object to the timeliness of a de novo appeal or the aptness of certiorari review, it is barred from raising these issues for the first time on appeal.

### I. The Petitioner's Claim of Waiver

We first address the petitioner's claim that the State is barred from raising the issues of the timeliness of a de novo appeal or the aptness of a writ of certiorari. As a grounds for his claims, the petitioner points to the State's failure to raise these issues in the criminal court proceeding.

#### A. Waiver of untimeliness of a de novo appeal

The petitioner claims that the State failed to raise in the criminal court the issue of the timeliness of a de novo appeal and that, accordingly, it has waived the issue on appeal. We disagree. The petitioner's chosen means of taking his case to the criminal court was a petition for writ of certiorari. When the matter was called up in the criminal court on November 13, 2006, the petitioner immediately argued insufficiency of the evidence—the lack of a factual basis for adjudicating a violation of the implied consent law. The assistant district attorney responded in kind. The only testimony came from the arresting officer, who testified for the State and introduced the videotape of the petitioner's field sobriety tests. The court took the case under advisement, and in its November 17, 2006 order, it sua sponte determined that the proceeding before the court was a timely appeal for de novo review. Even though the State "rose to the bait," so to speak, of the petitioner's claim of insufficiency of the evidence, we cannot say that the State waived a defense to a claim that had not been made and the basis of which did not surface until the trial court filed its dispositive order.

#### B. Waiver of aptness of certiorari review

The petitioner similarly claims that the State, by its failure to object in the criminal court, waived the aptness of a writ of certiorari. The State, of course, was aware on November 13, 2006, that the petitioner was proceeding via writ of certiorari; yet, it did not challenge the aptness of the writ. Indeed, the State apparently filed no response to the February 7 petition, did not move to dismiss, and did not raise the procedural issue in advance of or during the November 13, 2006 hearing in which it called the arresting officer to testify and to introduce the videotape. Thus, the record demonstrates that, if the procedural issue can be waived, the State waived it for purposes of appeal. See Tenn. R.App. P. 36(a).

The question here presented is whether the State may consent to appellate review via the writ of certiorari when the writ may otherwise be inapt. The resolution of this question is informed by whether the criminal court had jurisdiction to hear the case assuming that the writ was inappropriate.

A party cannot confer subject-matter jurisdiction on a court by an appearance, a plea, consent, silence or waiver. See County of Shelby v. City of Memphis, 211 Tenn. 410, 413, 365 S.W.2d 291, 292 (1963); State ex rel. Lea v. Brown, 166 Tenn. 669, 694, 64 S.W.2d 841, 849 (Tenn. 1933) ("It is a maxim in the law that consent can never confer jurisdiction. . . .").

In James v. Kennedy, 174 Tenn. 591, 129 S.W.2d 215 (1939), our supreme court reviewed the appeal of a plaintiff in a civil case that had originated in general sessions court in Davidson County. The plaintiff lost his bid for judgment on a small civil claim in general sessions court and prayed—and was granted—an appeal to the circuit court. Id. at 593, 129 S.W.2d at 215. "Prior to [a] hearing on the merits the defendant had moved the circuit court to dismiss the appeal for want of jurisdiction." Id. The basis of the defendant's

motion to dismiss the appeal was a provision of the private act that created the Davidson County General Sessions Court. The provision in question prohibited an appeal from that court when a civil case resulted in a judgment for a defendant or a judgment for a plaintiff in the amount of $50 or less. The private act also provided, however, that a losing defendant in a judgment of $50 or less or a losing plaintiff could proceed to the circuit court when "a petition for a writ of certiorari showing merit and sworn to has been filed with the Circuit Court within ten days from the date of the judgment complained of, and the writ has been granted." *Id.*, 129 S.W.2d at 216 (quoting Private Act of 1937, ch. 12). On the basis of an ordinary appeal being unavailable and no writ of certiorari having been sought, the supreme court affirmed the circuit court's dismissal of the appeal.

The high court said, "It is fundamental that jurisdiction, neither original nor appellate, can be conferred by consent and neither waiver nor estoppel could be more effective than the consent of parties." *Id.* at 595, 129 S.W.2d at 216. In determining that this legal principle governed the case at issue, the court analogized the method of review—writ of certiorari—availed by the private act to the use of the writ at that time to seek the supreme court's review of decisions of the court of appeals. The court noted that, by statute, the writ of certiorari was the single means of review of actions of the court of appeals. It then noted that it "uniformly felt compelled to dismiss appeals and writs of error undertaken by mistaken litigants from judgments of the Court of Appeals, although adverse parties had made no point on the practice and had responded to the assignments of error," and that it had "felt obliged to dismiss [late-filed] petitions for *certiorari* ..., although adverse parties undertook to waive the statutory require-

ments." *Id.* The court specifically held that "the circuit court is equally without power to acquire jurisdiction by waiver or by consent, of a case ... coming from the Court of General Sessions." *Id.* at 595–96, 129 S.W.2d at 216.

Thus, *James v. Kennedy's* concept of review by writ of certiorari is that the aptness of the writ is an issue of the appellate court's jurisdiction. In the present case, because such jurisdiction could not be conferred upon the criminal court by consent, estoppel, or waiver, the State's failure to object does not bar it from raising the issue in the present appeal.

## II. The Legality of the Petitioner's Appeal as One for de Novo Review

Now, we examine the criminal court's determination that the February 7, 2006 petition for a writ of certiorari should be treated as a rightful, ordinary appeal, a determination that led to its de novo review of the January 24, 2006 general sessions court order adjudicating a violation of the implied consent law.

The criminal court's order reflects that the general sessions court's order, which is the basis of the appeal but is not contained within the record, was entered on January 24, 2006. The petitioner filed his petition for writ of certiorari on February 7, 2006. Tennessee Code Annotated section 27–5–108(a) provides that a party aggrieved by the action of a general sessions court may appeal to the circuit court "within a period of ten (10) days." T.C.A. § 27–5–108(a) (2000). Such an appeal is heard de novo in the circuit court. *See id.* § 27–5–108(c). Applying this ten-day period straightforwardly, the petitioner's February 7 filing was late, coming 14 days after the general sessions court order was entered.

■ The trial court's treatment of the appeal as a timely section 27–5–108 appeal was based upon the civil nature of the underlying proceeding. "Generally, a violation of the implied consent law is civil in nature." *State v. Christopher Lonnie Hudgins,* 188 S.W.3d 663, 668 (Tenn.Crim. App., Nashville, 2005); *see* T.C.A. § 55–10–406(a)(3) (providing that a person who violates the implied consent law "shall not be considered as having committed a criminal offense"). The criminal court then relied upon Tennessee Rule of Civil Procedure 6.01, which promulgates rules in civil cases for computing "any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute." Tenn. R. Civ. P. 6.01. The rule says, "[T]he date of the act, event or default after which the designated period of time begins to run is not to be included," *id.,* and "[w]hen the period of time prescribed or allowed is less than eleven days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation," *id.* Applying the computation rules for the pendency of a civil action in circuit court, as did the criminal court, the last day for filing a section 27–5–108 appeal was February 7. (In 2006, January 24 fell on Tuesday, so two week-ends interrupt the sequential computation.) Thus, pursuant to that regime of computation, the petitioner's February 7 filing was timely as a section 27–5–108 appeal.

We cannot agree, however, that Rule of Civil Procedure 6.01 applies to the computation of time of this appeal from general sessions court. The Tennessee Rules of Civil Procedure do not generally apply to actions of general sessions courts. Tenn. R. Civ. P. 1. Three exceptions to this general rule are declared:

(1) The rules shall apply to general sessions courts exercising civil jurisdiction of the circuit or chancery courts; (2) The rules shall apply after appeal or transfer of a general sessions civil lawsuit to circuit court; and (3) Rule of Civil Procedure 69 governing execution on judgments shall apply to civil judgments obtained in general sessions courts.

Tenn. R. Civ. P. 1. Of these, exceptions (1) and (3) clearly do not apply. Exception (2), relative to appeals "of a general sessions civil lawsuit to circuit court," states that the Civil Rules apply *"after* appeal." *Id.* (emphasis added). The sense of these provisions is that the Civil Rules apply to the general sessions civil proceeding only after the appeal has been perfected by the proper filing. Thus, Rule 6.01 does not by the terms of the rules affect the computation of time of the filing which perfects the appeal.

Instead, the issue of computation is controlled by the general law, which provides,

The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is a Saturday, a Sunday, or a legal holiday, and then it shall also be excluded.

T.C.A. § 1–3–102 (2003); *see Biggs v. Memphis Loan and Thrift Co.,* 215 Tenn. 294, 298–99, 385 S.W.2d 118, 121 (1964) (applying Code section 1–3–102 to compute the time for de novo appeal from general sessions court); *Christy Johnson v. Duncan E. Ragsdale,* 158 S.W.3d 426, 428 (Tenn.Ct.App., Jackson, 2004) (applying Code section 1–3–102 to compute the time for filing a general sessions court appeal); *see also The Vanderbilt University v. Charles Phillip Haynes,* No. M2001–02688–COA–R3–CV, 2003 WL 239819 (Tenn.Ct.App., Nashville, Feb. 4, 2003).

Therefore, pursuant to the proper regime for computing the time for a de novo appeal in this case, the petitioner's February 7 filing was late, and the criminal court

was not authorized to conduct a de novo review of the general sessions court order. Thus, upon our own de novo review of the criminal court's resolution of a question of law—the application of Tennessee Rule of Civil Procedure 6.01, we hold that the criminal court erred and that it should not have adjudicated the case upon de novo review.[1]

### III. The Legality of Review by Writ of Certiorari

■ Next, we examine the propriety of the February 7, 2006 filing as a petition for a writ of certiorari, which of course was the way the document was captioned and worded.

■ The common law writ of certiorari—now manifest in statutory terms, see T.C.A. § 27–8–101(2000)—generally avails an aggrieved litigant the opportunity to seek judicial review by a higher court of an inferior tribunal's ruling when no other adequate remedy for review exists, see id. § 102(2); *State v. Adler,* 92 S.W.3d 397, 401 (Tenn.2002); see also T.C.A. § 27–8–104(a) (empowering circuit courts, in civil cases, to remove by certiorari "any cause or transcript thereof from any inferior jurisdiction, on sufficient cause"). When available, the writ of certiorari is nevertheless limited in application; it does not generally lie to inquire into the correctness of an action taken by a tribunal with jurisdiction to act. *State v. Johnson,* 569 S.W.2d 808, 815 (Tenn.1978). Our supreme court has said, however, "that an appellate court is within its province to grant a writ of certiorari '[w]here the action of the trial court is without legal authority.'" *Adler,*

92 S.W.3d at 401 (quoting *Johnson,* 569 S.W.2d at 815)). Thus, the writ of certiorari may be utilized to review an action when the lower court "acted without legal authority *and* [when] 'there is no other plain, speedy, or adequate remedy.'" *Id.* (quoting T.C.A. § 27–8–101) (emphasis added).

The issue presented is whether the certiorari proceeding was doomed as a matter of law because the petitioner had not availed himself the remedy of Code section 27–5–108 de novo review by filing a timely appeal pursuant to that section.

■ Common law certiorari review is not available when "other plain, speedy, or adequate remedy" exists. T.C.A. § 27–8–101.

> [T]he well known rule [is] that, the remedy by certiorari cannot be resorted to as a substitute for appeal, except when a case is made out in the petition showing that the appeal was defeated—
>
> 1. By the oppressive or erroneous act of the court or justice.
>
> 2. By the wilful or negligent act of the clerk.
>
> 3. By the contrivance or procurement of the adverse party.
>
> 4. By inevitable accident.
>
> 5. By the blameless misfortune of the petitioner.

*Uselton v. Price,* 41 Tenn.App. 134, 292 S.W.2d 788, 792 (1956). None of these bases for permitting certiorari review in lieu of an ordinary appeal presently appear in the record before us. We note that Tennessee Code Annotated section 27–5–

---

1. The holding at this juncture reflects back upon our analysis in section *I* of this opinion. As we noted above, in *James v. Kennedy,* the supreme court took pains to indicate that the writ of certiorari was the only means available for reviewing the action of the Davidson County General Sessions Court, and that ac-

cordingly, the aptness of the writ was a matter of appellate jurisdiction. In the present case, although a direct appeal for de novo review had been available via Code section 27–5–108, the lapse of the ten-day appeal period closed that avenue of review before the writ of certiorari was sought.

108's provision for an ordinary appeal would have resulted in a full de novo review of the case against the petitioner. Moreover, he had ten days after January 24, 2006, to file his appeal. The petitioner was obliged to demonstrate "in the petition" that cause existed to justify review by writ of certiorari by revealing for example, "blameless misfortune," "inevitable accident," or the prejudicial acts of another person. *See Uselton*, 292 S.W.2d at 792. The petitioner in the present case failed to justify the use of the writ of certiorari. Moreover, the ordinary appeal would have afforded the petitioner a plain, speedy, and adequate remedy. For these reasons, we reverse the order of the criminal court.

## IV. Conclusion

The petitioner's February 7, 2006 attempt to seek review in the criminal court was not authorized in law as an ordinary appeal, and the petition for a writ of certiorari did not justify the issuance of the writ. Accordingly, the judgment of the criminal court is reversed, and the case is remanded to the criminal court, which shall dismiss the general sessions appeal.